Antonio **CIPOLLONE**, individually and as executor of the estate of Rose D. Cipollone, Plaintiff,

v.

**LIGGETT GROUP, INC., et al., Defendants.**

Civ. A. No. 83–2864.

United States District Court, D. New Jersey.

Sept. 4, 1987.

Budd Larner Gross Picillo Rosenbaum Greenberg & Sade, Marc Z. Edell, Short Hills, Wilentz, Goldman & Spitzer, Alan M. Darnell, Woodbridge, N.J., for plaintiff.

Brown & Connery, Raymond F. Drozdowski, Westmont, N.J., for defendant Philip Morris Inc.

Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, Alan S. Naar, Woodbridge, N.J., for defendant Liggett Group, Inc.

Stryker, Tams & Dill, William S. Tucker, Newark, N.J., for defendant Lorillard, Inc.

OPINION

SAROKIN, District Judge.

Defendants move to bar the introduction of evidence relating to their lobbying activities in connection with legislation affecting the cigarette industry. Although neither party has submitted any specific evidence to be ruled upon, plaintiff generally proposes to introduce evidence of rewards to members of Congress who voted favorably to the industry on such legislation, and

instances of the submission of false and misleading information to improperly influence such legislation.[1]

## DISCUSSION

 Defendants' motion to exclude is premised on the so-called *Noerr-Pennington* doctrine.[2] That doctrine, developed in the antitrust context, provides that the first amendment prevents the imposition of liability for "mere attempts to influence the Legislative Branch for the passage of laws or the Executive Branch for their enforcement." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972); *see United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The Court has extended the doctrine to similarly protect the first amendment right to petition the courts or administrative agencies. *See California Motor Transport Co.*, 404 U.S. at 510, 92 S.Ct. at 611.

Defendants contend that plaintiff's motivation in introducing the disputed evidence is an attempt to impose liability on the basis of protected "lobbying," in contravention of the *Noerr-Pennington* doctrine. Furthermore, defendants contend that such evidence is not admissible for any other purpose. The court evaluates defendants' arguments with respect to the two types of evidence plaintiff seeks to introduce—that defendants offered financial rewards to legislators who supported the cigarette industry and that defendants consistently made misrepresentations and gave false information to Congress.

### A. *Financial rewards to legislators*

Plaintiff seeks to introduce evidence that defendants offered jobs to members of Congress who acted favorably towards them. The court holds that such evidence is not evidence of "lobbying" activity entitled to *Noerr-Pennington* protection.

In *Noerr*, the court recognized a limited exception to its general rule.

> There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified.

365 U.S. at 144, 81 S.Ct. at 533. This "sham" exception applies to situations where the goal of the political activity is to directly injure a competitor, and the political actor has no real interest in the outcome of its actions. *See California Motor Transport*, 404 U.S. at 512, 92 S.Ct. at 612. The exception, in this limited sense, is inapplicable to defendants' activity—plaintiffs cannot seriously contend that defendants offered jobs to legislators in order to directly harm plaintiff, and that defendants had no interest in the pending legislation in Congress.

---

**1.** Apparently, defendants' motion is in response to two interrogatory answers of plaintiff:

> As evidence built regarding the dangers of smoking, defendants falsely represented to the public that cigarettes had not been shown to be dangerous.... On those occasions where the government tried to force the cigarette companies to warn the public of the dangers of smoking, defendants spent vast sums of money on lobbying efforts to defeat such initiatives.

> [Defendants are liable for punitive damages in part because] through financial rewards and by the use of false and misleading information [defendants] induced certain elected officials to enact legislation that minimized the health effect of cigarette smoking and was contrary to the best interest of the public.

Brief in Support of Defendants' Motion to Exclude Evidence, at 2 n. 1. Plaintiff's brief more specifically describes the evidence here in dispute:

> At trial, plaintiff will show how defendants perpetuated a consistent flow of false and misleading information to Congress, as well as how defendants offered jobs to Congressmen who acted favorably towards them.

Brief in Opposition to Defendants' Motion to Exclude Evidence, at 7.

**2.** Defendants also contend that such evidence "may not be admitted for the purpose of impeaching legislative action." The court agrees, but plaintiff is not seeking to introduce the evidence for that purpose. Therefore, the court focuses on defendants' *Noerr-Pennington* argument.

However, several courts have also held that the *Noerr-Pennington* doctrine was not "intended to protect those who employ illegal means to influence their representatives in government." *Sacramento Coca-Cola Bottling Co. v. Chauffers, Teamsters & Helpers Local No. 150*, 440 F.2d 1096, 1099 (9th Cir.1971); *see Central Telecommunications, Inc. v. TCI Cablevision, Inc.*, 800 F.2d 711, 724 (8th Cir.1986) (citing *Westborough Mall v. City of Cape Girardeau*, 693 F.2d 733, 746 (8th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2122, 77 L.Ed.2d 1303 (1983)), *cert. denied*, —— U.S. ——, 107 S.Ct. 1358, 94 L.Ed.2d 528 (1987); *Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 663 F.2d 253 (D.C.Cir.1981). *Noerr* explained that Congress "has traditionally exercised extreme caution" in regulating political conduct. 365 U.S. at 141, 81 S.Ct. at 531. Furthermore, courts have recognized that conduct that would be sanctioned in an adjudicative context may be protected conduct in the legislative realm. *See, e.g., California Motor Transport*, 404 U.S. at 512, 513, 92 S.Ct. at 612, 613; *Metro Cable Co. v. CATV of Rockford, Inc.*, 516 F.2d 220, 228 (7th Cir.1975). Nonetheless, the courts cited above have reasoned that the purpose behind the *Noerr-Pennington* rule—that the exercise of first amendment freedoms should not be chilled by the threat of potential liability—does not extend to lobbying methods that "subvert the integrity of the govermental process." *Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 663 F.2d 253, 262 (D.C.Cir.1981).

One court has explicitly identified "attempts to influence governmental action through overtly corrupt conduct such as bribes" as an example of unprotected activity tending to subvert the integrity of the political process. *Federal Prescription Service, Inc.*, 663 F.2d at 263. If plaintiff can prove, as he alleges, that defendants improperly rewarded legislators for their actions in proposing or opposing certain legislation, it is inconceivable that such activity is entitled to first amendment protec-

tion. That kind of illegal or unethical conduct is not worthy of such protection. If plaintiff offers evidence that such conduct occurred, and that evidence is otherwise relevant and admissible, the first amendment should not bar its introduction. Such conduct is not protected free speech. It corrupts the system rather than advances it.

The court denies defendants' motion with respect to evidence that defendants offered financial rewards to elected officials to induce legislative action.[3]

### B. *Providing false and misleading information*

In *Noerr*, the Supreme Court held that defendant's use of a "third-party technique," involving the circulation of propaganda as if it were the spontaneous declarations of independent groups, was protected political activity that could not form the basis for Sherman Act liability. 365 U.S. at 140–41, 81 S.Ct. at 531. The Court, though characterizing the technique "as involving deception of the public, manufacture of bogus sources of reference, and distortion of public sources of information," found that the Sherman Act's code of ethics condemning trade restraints was not intended to regulate such unethical, but protected political activity.

Although, as explained above, several courts have held that *Noerr* did not intend to protect all lobbying techniques, plaintiff's allegations regarding misrepresentation to members of Congress are indistinguishable from the actions protected by *Noerr* itself. Furthermore, such misrepresentations escape the "sham" exception—although allegedly "unethical," defendants' actions were taken to influence political activity, not to directly injure the plaintiff. The claim of furnishing false and misleading information to Congress, if true, although unethical and reprehensible, is entitled to protection as political speech.

However, the Supreme Court has made plain that such evidence is admissible under certain circumstances.

---

**3.** The court trusts that the reputation of past or current members of Congress will not be impugned without substantial evidence to support such serious changes.

It would be of course still be within the province of the trial judge to admit this evidence, if he deemed it probative and not unduly prejudicial, under the "established judicial rule that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends to reasonably show the purpose and character of the particular transactions under scrutiny.

*United Mine Workers v. Pennington,* 381 U.S. 657, 670 n. 3, 85 S.Ct. 1585, 1593 n. 3, 14 L.Ed.2d 626 (1965); *see Alexander v. National Farmers Org.,* 687 F.2d 1173, 1196 (8th Cir.1982); *Feminist Women's Health Center v. Mohammad,* 586 F.2d 530, 543 n. 7 (5th Cir.1978). Plaintiff, at argument, claimed that it did not seek to establish liability for such actions, but rather offers it as evidence to support its allegations of a continuing course of deceptive conduct of which this activity was just one small part. Whether such evidence is admissible requires a balancing of its probative value against undue or unfair prejudice. *Cf.* Fed.R.Evid. 403 (requiring a similar balancing). Although one court has suggested that such evidence is presumptively prejudicial, *see United States Football League v. National Football League,* 634 F.Supp. 1155, 1181 (S.D.N.Y.1986), this court deems such a presumption inappropriate in this case, where the lobbying activity, though protected, is alleged to be ethically questionable.

The right to petition Congress is a valued one entitled to protection. To impose liability for those efforts might have a chilling effect upon those seeking redress. Whether such activity should be evidential for other purposes or whether the activity exceeds the boundaries of the protection afforded are issues which can only be decided in context. The court, at this time, cannot evaluate whether the specific evidence to be offered is probative of a continuing course of conduct that corroborates plaintiff's direct allegations and whether any probative value is outweighed by undue prejudice.[4]

Therefore, the court denies defendants' motion *in limine* to exclude evidence that defendants provided false and misleading information to members of Congress.

CONCLUSION

By this decision the court merely finds that the profferred evidence is not inadmissible under the *Noerr-Pennington* doctrine. Issues of relevance, probative value, and unfair prejudice must await trial and consideration by the court of the particular evidence being offered.

ORDER

This matter having come before the court on defendants' motion to exclude evidence relating to exercise of defendants' right to petition Congress; and the court having considered the written submissions and heard oral argument; and for the reasons expressed in the accompanying opinion,

IT IS this 4 day of Sept., 1987, hereby

ORDERED that defendants' motion to exclude evidence relating to exercise of defendants' right to petition Congress is denied, without prejudice to defendants' right to object to the admissibility of such evidence at trial.

---

**4.** In related litigation, courts have split over the admissibility of such evidence under the *Pennington* rule. Compare *Marsee v. U.S. Tobacco Co.,* 639 F.Supp. 466 (W.D.Okla.1986) (admitting the evidence under *Pennington* on the grounds that it was relevant to the need for warnings) *with Galbraith v. R.J. Reynolds Tobacco Co.,* No. C 144 147 (Cal.Sup.Ct. November 20, 1985) (excluding the evidence by order without explanation).